```
_____
                             )
DIETRICH R. BERGMANN,        )
                             )
            Plaintiff,       )
                             ) Civil Action No. 09-1378 (EGS)
        v.                   )
                             )
UNITED STATES DEPARTMENT OF  )
TRANSPORTATION, et al.,      )
                             )
            Defendants.      )
_____)
```

**MEMORANDUM OPINION**

Pending before the Court is defendants' motion to transfer venue to the United States District Court for the Eastern District of Michigan (the "Eastern District of Michigan"). Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **GRANTS** defendants' motion to transfer venue.

**I.    BACKGROUND**

Plaintiff Dietrich R. Bergmann ("Bergmann") is a resident of Ann Arbor and Gross Pointe Woods, Michigan. Am. Compl. ¶ 68. He brings this action, pro se, challenging "two interrelated highway construction projects that the Defendants and the Michigan Department of Transportation ("MDOT") propose for construction in the City of Detroit, Wayne County, Michigan." Am. Compl. ¶ 1.

Specifically, plaintiff challenges defendants' approval of (1) the Detroit River International Crossing project (the "DRIC project"), and (2) the Interstate Highway 94 Rehabilitation project (the "I-94 Rehabilitation project"). *See generally* Am. Compl.; Pl.'s Opp'n Br. at 5.

## A.    The Detroit River International Crossing Project

The DRIC project involves the construction of a new bridge connecting Detroit, Michigan with Windsor, Ontario in Canada. *See* Am. Compl. ¶ 14; *see also* Defs.' Ex. C, DRIC Record of Decision ("DRIC ROD") at 1 (explaining that the DRIC project "consists of an interchange connection from I-75 to a new U.S. border inspections plaza and a new bridge to Canada"). The DRIC project began in 2001, when representatives from the Federal Highway Administration ("FHWA"), the MDOT, and two Canadian government agencies met to discuss border transportation demand. DRIC ROD at 1. The governments commissioned a planning study, which determined that additional capacity was needed to meet future transportation needs. Defs.' Ex. C, DRIC ROD at 1. Consequently, on March 24, 2003, a Notice of Intent to prepare an Environmental Impact Statement ("EIS") for a border crossing was published in the *Federal Register*. Defs.' Ex. C, DRIC ROD at 1. A "scoping meeting" was held in Detroit, Michigan in August 2005. Defs.' Ex. C, DRIC ROD at 1.

In February 2008, a Draft Environmental Impact Statement
("DEIS") was signed by defendant James J. Steele ("Steele")[1] in
Lansing, Michigan, and a Notice of Availability was published in
the *Federal Register*. Defs.' Ex. C, DRIC ROD at 1. Public
hearings on the DEIS were held in Detroit, Michigan, and comments
to the DEIS were solicited for a 90-day period. Defs.' Ex. C,
DRIC ROD at 1; *see also* Defs.' Ex. B, DRIC FEIS at ES-5
(discussing the steps taken to facilitate public involvement in
the DRIC project, including: holding "almost 100 public meetings,
hearings, and workshops"; opening a DRIC Study Information Office
at the Delray Community Center in Detroit "to provide information
and answer questions about the project"; mailing notices of
public meetings to "approximately 10,000 residences and
businesses"; and handing out fliers door-to-door "in Delray and
along the I-75 service drive north of the freeway").

On November 21, 2008, defendant Steele signed the Final
Environmental Impact Statement ("FEIS") for the DRIC project.
*See generally* Defs.' Ex. B. The FEIS identified the Delray
neighborhood of Southwest Detroit as the preferred alternative
for the DRIC project. *See* Defs.' Ex. B, DRIC FEIS at ES-16 - ES-
26, 2-56. Two months later, on January 14, 2009, defendant
Steele signed the ROD, which approved the implementation of the

---

[1]     Defendant Steele is the Division Administrator of the
Michigan Division of the FHWA. *See* Docket No. 13, Declaration of
James J. Steele ("Steele Decl.") ¶ 2.

pending DRIC project in the preferred Delray location. *See generally* Defs.' Ex. C. The DRIC project is currently in its design phase, which is expected to take at least 18 months. *See* Docket No. 13, Declaration of James J. Steele ("Steele Decl.") ¶ 15 (explaining that the DRIC project moved from the project assessment phase to the design phase, but noting that "[t]he project will not move forward in a meaningful way unless and until the Michigan state legislature authorizes and funds the DRIC").

**B.  The I-94 Rehabilitation Project**

The I-94 Rehabilitation project is a highway construction plan that involves the widening of a seven-mile segment of I-94 in Detroit, Michigan. Am. Compl. ¶ 17; *see also* Defs.' Ex. E, I-94 FEIS at 2 ("[T]he I-94 Rehabilitation Project would provide transportation improvements to 6.7 miles of I-94 ("Edsel Ford Freeway") in the city of Detroit from just east of I-96 to east of the Conner Avenue interchange."). The I-94 Rehabilitation project began in April 1994, Steele Decl. ¶ 4, in an attempt to "preserve and enhance a vital component of Michigan's transportation infrastructure[.]" Defs.' Ex. E, I-94 FEIS at 2.

Defendant Steele signed the I-94 Rehabilitation project DEIS on January 22, 2001, Steele Decl. ¶ 4, which set forth "the alternatives that were evaluated to determine the best option to address current and projected travel demands, reduce the number

4

of traffic crashes, and rehabilitate the pavement and bridges along I-94." Defs.' Ex. F, I-94 ROD at 1. Public hearings were held on the DEIS in Detroit, Michigan, as were numerous community workshops and meetings. *See* Defs.' Ex. E, I-94 FEIS at 24-25 (describing the comprehensive public participation and agency coordination process initiated by the MDOT). Defendant Steele signed the FEIS on December 21, 2004, in Lansing, Michigan, and the ROD on December 15, 2005. Steele Decl. ¶ 4. Since its approval, however, the I-94 Rehabilitation project has been placed on hold by the MDOT due to lack of funding. Steele Decl. ¶ 14.

### C. This Action

Plaintiff filed suit in this Court on July 27, 2009, alleging, *inter alia*, that defendants' issuance of the RODs for the DRIC and I-94 Rehabilitation projects violated the Administrative Procedure Act ("APA"), the National Environmental Policy Act ("NEPA"), and Sections 4(a) and 4(f) of the Department of Transportation Act (the "DOT Act"). *See* Am. Compl. ¶ 2; Pl.'s Opp'n Br. at 5-6. Through this lawsuit, plaintiff seeks declaratory and injunctive relief. Am. Compl. ¶¶ 5-7. On December 2, 2009, defendants filed a motion to transfer this action to the Eastern District of Michigan, which plaintiff opposed on January 25, 2010. The motion is now ripe for determination by the Court.

## II.   STANDARD OF REVIEW

The federal venue transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The district court has discretion to adjudicate motions to transfer according to an "'individualized case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Demery v. Montgomery County*, 602 F. Supp. 2d 206, 210 (D.D.C. 2009) ("Because it is perhaps impossible to develop any fixed general rules on when cases should be transferred[,] . . . the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." (internal quotation marks omitted)).  The moving party bears the burden of establishing that transfer of the action is proper. *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005); *see also SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (noting that district court's ruling denying motion to transfer "was effectively a ruling that [appellant] had failed to shoulder his burden").

Defendants must make two showings to justify transfer. First, defendants must establish that the plaintiff could have

brought suit in the proposed transferee district. *Devaughn*, 403 F. Supp. 2d at 71-72; *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Second, defendants must demonstrate that considerations of convenience and the interests of justice weigh in favor of a transfer. *Devaughn*, 403 F. Supp. 2d at 72; *Trout Unlimited*, 944 F. Supp. at 16.

**III. DISCUSSION**

    **A.   Where the Case Could Have Been Brought**

Before the Court transfers an action to another venue, the defendant must show that the plaintiff could have brought the action in the proposed transferee district. *Devaughn*, 403 F. Supp. 2d at 72. As plaintiff concedes, this action could have been brought in the Eastern District of Michigan because (i) a significant number of events giving rise to plaintiff's claims occurred in the Eastern District of Michigan, and (ii) plaintiff is a resident of Michigan. *See* Pl.'s Opp'n Br. at 7 ("The answer to whether the Plaintiff could have filed [this action] in the Eastern District of Michigan is 'yes[.]'"); *see generally* 28 U.S.C. § 1391(e)(2) ("A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States . . . may  . . . be brought in any judicial district in which  . . . a substantial

part of the events or omissions giving rise to the claim occurred
. . . or the plaintiff resides . . . .").

**B.    The Balance of Private and Public Interests**

As this action could have been brought in the Eastern
District of Michigan, the Court must now determine whether
equitable factors support defendants' requested transfer.  In
determining whether transfer is justified, the Court weighs a
number of private-interest and public-interest factors.  *See*
*Devaughn*, 403 F. Supp. 2d at 72.  In this case, these factors
weigh in favor of transfer to the Eastern District of Michigan.

**1.    Private-Interest Factors**

The private-interest considerations the Court looks to when
deciding whether to transfer a case include: "(1) the plaintiff's
choice of forum; (2) the defendant's choice of forum; (3) where
the claim arose; (4) the convenience of the parties; (5) the
convenience of witnesses, particularly if important witnesses may
actually be unavailable to give live trial testimony in one of
the districts; and (6) the ease of access to sources of proof."
*Demery*, 602 F. Supp. 2d at 210.

With regard to the first factor, the Court typically accords
"substantial deference" to a plaintiff's choice of forum.
*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000);
*see also Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C.
Cir. 1980) ("[A] trial judge must give considerable, but not

conclusive, weight to the plaintiff's initial forum choice."). Substantially less deference is warranted, however, when a plaintiff choose a forum other than his home forum. *See Reiffin*, 104 F. Supp. 2d at 52 ("Deference to the plaintiff's choice of forum is particularly strong where the plaintiff has chosen his home forum. Conversely, substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum."). The Court may also give less deference when "'most of the relevant events occurred elsewhere.'" *Greene v. Nat'l Head Start Ass'n*, 610 F. Supp. 2d 72, 75 (quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)).

It is undisputed that the plaintiff in this case is not a resident of the District of Columbia. Indeed, "[p]laintiff is a long-time resident and voter in southeast Michigan." Am. Compl. ¶ 4. As plaintiff has proffered no ties connecting himself with the District of Columbia, the Court need not afford plaintiff the substantial deference given to litigants in their "home forum." *See, e.g.*, *Reiffin*, 104 F. Supp. 2d at 52; *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002).

Plaintiff's choice of forum is also entitled to less deference where, as here, the majority of operative facts took place outside the District of Columbia. As defendants explain, "[a]ll of the challenged acts or omissions occurred in the State of Michigan, and almost all of them occurred in the Eastern

District of Michigan, where the challenged environmental documents were prepared, where the proposed DRIC will be, and where the segment of I-94 to be widened lies." Defs.' Br. at 9. While plaintiff argues that his claims "arose principally at the headquarters offices of the Defendants in Washington, D.C.," Pl.'s Opp'n Br. at 8, defendants persuasively counter that "'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged with generally regulating and overseeing the [administrative] process.'" Defs.' Br. at 14 (quoting *DeLoach v. Philip Morris Co., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000)).

With regards to the DRIC project, the Court acknowledges that Washington-based federal officials had a role in the events underlying plaintiff's lawsuit. *See* Steele Decl. ¶ 6 (explaining that he "secured the legal review of any prior concurrence of officials in FHWA's headquarters in Washington, D.C. before signing the DEIS, FEIS and ROD"); *see also* Defs.' Reply Br. at 6-10 (describing the supporting role played by officials from the United States Department of Transportation in Washington, D.C.).[2] Nevertheless, the Court finds that the majority of events relevant to plaintiff's action occurred in or around the Eastern District of Michigan – not the District of Columbia. *See* Steele

---

[2]    Mr. Steele did not obtain prior concurrence from Washington-based FHWA officials for the I-94 Rehabilitation project. *See* Steele Decl. ¶ 8.

Decl. ¶ 6 ("Although FHWA officials from D.C. were involved in an advisory capacity, they did not participate in the decision making for the DRIC, or direct the planning process for it.  I had . . . ultimate supervisory authority over the project assessment and was responsible for final decisions for both projects.").  In particular, in addition to Mr. Steele's Michigan-based supervisory role of the DRIC and I-94 Rehabilitation projects,[3] this Court is persuaded by the fact that (i) the environmental impact statements for both projects were prepared in Michigan, Steele Decl. ¶¶ 3-4, 9; (ii) the RODs for both projects were signed in Michigan, Steele Decl. ¶¶ 3-4, 9; (iii) the environmental studies supporting the DEIS, FEIS and ROD for both projects were conducted in Michigan, Steele Decl. ¶¶ 9, 10; (iv) the United States' public hearings, meetings, and workshops on the DRIC project were held in Michigan, *see* Defs.' Ex. B, DRIC FEIS at 6-13 - 6-15;[4] (v) the outreach efforts to solicit public input on both projects were targeted at Michigan residents, Steele Decl. ¶ 12; (vi) the planning process for both projects were coordinated with state and local officials in Michigan, Steele Decl. ¶ 11; (vii) the administrative records for

---

[3]     *See* Steele Decl. ¶ 3 ("I worked on the DRIC project assessment exclusively in Michigan."); Steele Decl. ¶ 4 ("I worked on [the I-94 Rehabilitation Project] documents exclusively in Michigan.").

[4]     *See also* www.partnershipborderstudy.com/meetings_us.asp.

both projects are located in Michigan, where they were originally compiled, Steele Decl. ¶ 11; and (viii) the State of Michigan will own and operate the portion of the DRIC project on United States soil and will continue to own and operate the section of I-94 where the I-94 Rehabilitation project will occur, Steele Decl. ¶¶ 15-16. Accordingly, the Court concludes that the concurring role of some Washington-based officials is simply insufficient to overcome Michigan's substantial ties to the DRIC and I-94 Rehabilitation projects.

Therefore, because plaintiff lacks a connection to the District of Columbia, and because the majority of operative events underlying plaintiff's action occurred outside the District of Columbia, the Court accords less deference to plaintiff's choice of forum.

Next, the Court considers the second private-interest factor - defendants' choice of forum. Defendants have legitimate reasons for preferring the Eastern District of Michigan. For instance, Defendant Steele, who had "ultimate supervisory authority" over the DRIC project assessment, has his principal place of business in Michigan, *see* Steele Decl. ¶¶ 2, 6; the majority of operative events occurred in Michigan, *see supra* at 9-12; and the outcome of this case will be felt most directly in Michigan. This factor, therefore, weighs in favor of transfer.

As to the third factor — where the claim arose — it is clear that the majority of events underlying this lawsuit occurred in or around the Eastern District of Michigan.  In addition, as discussed above, the contested environmental studies and NEPA reports were prepared and signed in Michigan by a Michigan-based federal official who was "responsible for final decisions for both projects."  *See* Steele Decl. ¶¶ 6, 9, 11; *cf. Greater Yellowstone Coal.*, No. 07-2111, 2008 U.S. Dist. LEXIS 33641, at *14-15 (D.D.C. Apr. 24, 2008) ("[T]he Court also finds that the claim did not 'arise elsewhere,' but rather arose in this District, where the Rule was drafted and published . . . . The Final Rule was signed by the Assistant Secretary of the Interior for Fish and Wildlife and Parks, who is based in Washington, D.C.").  Accordingly, this factor also weighs in favor of transfer.

The fourth private-interest factor the Court considers is the convenience of the parties.  Plaintiff in this action is a resident of Michigan, as is defendant Steele.  Because the remaining federal defendants are located in the District of Columbia, however, this factor is neutral in the Court's analysis.[5]

---

[5]    Plaintiff asserts that "although he resides in Ann Arbor and Grosse Pointe Woods, Michigan, [he] finds the U.S. District Court for the District of Columbia more convenient inasmuch as he will be obliged to pay the travel costs of any witnesses he calls and the majority of witnesses he will call for a deposition, hearing, and or/trial have their primary office within the District of

The final private-interest factors for the Court to consider are convenience of witnesses and the ease of access to sources of proof. Because this case is an action for review of an administrative record where a trial is unnecessary and live testimony is unlikely, the Court finds that it need not consider these factors. *See Greater Yellowstone Coal.*, 2008 U.S. Dist. LEXIS 33641, at *14-15 (explaining that in an APA action, these factors are not relevant to the court's venue analysis); *Trout Unlimited*, 944 F. Supp. at 18 (explaining that because "judicial review will be limited to the administrative record," these factors have "less relevance"). To the extent these factors are relevant, however, the Court concludes that they weigh slightly in favor of transfer to the forum in which the administrative records reside - the Eastern District of Michigan. *See* Steele Decl. ¶ 11 ("The documents that will constitute the administrative records are in Michigan."); *see generally, e.g.*, *Intrepid Potash-New Mexico, LLC v. United States DOI*, 669 F. Supp. 2d 88, 98 (D.D.C. 2009) ("In a case involving review of an agency action, 'the location of witnesses is not a significant

---

Columbia." Pl.'s Opp'n Br. at 8. As discussed *infra*, however, because this action is based on the review of administrative records neither trial nor witness testimony is likely. *See, e.g.*, *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003) ("Because this action involves an administrative review that the court is likely to determine on the papers . . . the location of witnesses is not a significant factor."). The Court therefore finds plaintiff's convenience argument unpersuasive.

factor,' but '[t]he location of the administrative record, however, carries some weight[.]'" (quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003)).

### 2.   Public-Interest Factors

Having concluded that plaintiff's choice of forum is entitled to less deference and that the other private-interest factors are neutral or favor transfer to the Eastern District of Michigan, the Court now turns to the public-interest factors. The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Devaughn*, 403 F. Supp. 2d at 72.

The first two public-interest factors are neutral in the Court's analysis. With regard to the transferee's familiarity with the governing laws, the Court notes that this case involves the interpretation of federal statutes. Because no issues of state law have been raised, there is no advantage to having a federal court familiar and experienced with the state law of Michigan adjudicate plaintiff's claims. *See* Defs.' Br. at 16; Pl.'s Opp'n Br. at 9. Moreover, it appears that a transfer to the Eastern District of Michigan would lead neither to unnecessary delay nor to more rapid resolution. *See* Defs.' Br. at 16 n.14 (noting "no appreciable difference in the median time

from filing to disposition in civil cases between the Eastern
District of Michigan and the District of Columbia").[6]
Accordingly, these factors are neutral.

The final factor for the Court to consider is the local
interest in deciding local controversies at home. Plaintiff
argues that the DRIC and I-94 Rehabilitation projects do not
present a "local controversy." Pl.'s Opp'n Br. at 10. Instead,
he argues that his action is "first and foremost a dispute over
whether Defendants complied with the federal statutes governing
the actions they were required to take to comply with NEPA and
the DOT Act." Pl.'s Opp'n Br. at 10. While this is undoubtedly
true, the fact that plaintiff's cause of action arises under
federal law does not mean that the subject of his lawsuit does
not present an issue of local controversy. To the contrary,
there can be no doubt that the projects at issue in this case
will directly affect the lives of Michigan residents. As this
Court recently recognized, "[b]ecause it is the jobs, homes,
businesses, churches, parks, and historical properties of the
people of Southwest Detroit that will be directly affected by the
DRIC project . . . the Eastern District of Michigan has a much
stronger interest in this action than the District of Columbia."
See Latin Americans for Soc. & Econ. Dev. v. Adm'r of the FHWA,

---

[6]     While plaintiff asserts that "transferring this case to
Michigan at this time probably will lead to a two month to three
month delay in adjudicating this case," Pl.'s Opp'n Br. at 9-10,
he provides no support for this generalized assertion.

No. 09-897, Docket No. 35 at 19 (D.D.C. Nov. 25, 2009), motion

for reconsideration denied, 2009 U.S. Dist. LEXIS 122819 (D.D.C.

Dec. 14, 2009) (transferring related action challenging the DRIC

project to the Eastern District of Michigan).  Likewise, there is

a much stronger interest in having the I-94 Rehabilitation

project decided in the forum where the challenged road will be

built.  *See, e.g.*, *Env't Def. v. United States Dep't of Transp.*,

No. 06-2176, 2007 U.S. Dist. LEXIS 36059, at *13-14 (D.D.C. May

17, 2007) ("The most persuasive factor supporting transfer is

Maryland's localized interest in the dispute.  The case

constitutes a far greater 'matter of great public concern' to the

citizens of Maryland than to the citizens of the District of

Columbia.  The highway will be located solely in the State of

Maryland. . . . The [highway] will displace Maryland homes and

provide a transportation option for Maryland residents.  Its

center of gravity is in Maryland.  Transfer to Maryland will

facilitate the ability of 'local citizens to attend and observe

the proceedings in this case.'" (citations omitted)).[7]  The Court

_____

[7]    *See also Flowers*, 276 F. Supp. 2d at 71 (acknowledging that
the health of the Florida Everglades "has a national aspect," but
concluding that "there is a strong local interest in having [the]
action decided in the Southern District of Florida"); *Nat'l
Wildlife Fed. v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006)
("While the fact that Plaintiffs' claims invoke federal law,
relate to the Everglades ecosystem, and are brought by a national
environmental organization suggests that the case has a 'national
aspect,' the extent and degree of Florida's interest is
undisputable. . . . As the interests of justice are promoted when
a localized controversy is resolved in the region it impacts, the
Court concludes that the final public interest factor supports

concludes, therefore, that the interests of justice would be served by transfer of this action to the Eastern District of Michigan.

In sum, having balanced plaintiff's choice of forum in the District of Columbia against the relevant private- and public-interest factors, the Court concludes that the balance of private and public interests counsels in favor of transferring this action to the judicial district with the greatest stake in the pending litigation - plaintiff's home forum and the site of the proposed DRIC and I-94 Rehabilitation projects – the Eastern District of Michigan.  This conclusion is further bolstered by the fact that a related action is pending in the Eastern District of Michigan - *Latin Americans for Social and Economic Development v. Administrator of the Federal Highway Administration*, No. 10-10082-AC (E.D. Mich.).[8]  *See FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 29 (D.D.C. 2008) ("The interests of justice are better

_____

transfer." (internal citations omitted)); *Trout Unlimited*, 944 F. Supp. at 19 ("Plaintiffs challenge a decision made by a Forest Service official located in Colorado, which directly affects [natural resources] located in the mountains of Colorado.  A clear majority of the operative events took place in Colorado. As a result, the State of Colorado has a substantial interest in the resolution of the claims of this lawsuit.").

[8]     At the time this Court transferred the *Latin Americans for Social and Economic Development* case to the Eastern District of Michigan another related case was pending in that District - *Detroit International Bridge Company v. Federal Highway Administration*, No. 09-13805 (E.D. Mich.).  This case was closed on February 17, 2010, however, after the Court granted defendants' motion to dismiss.

served when a case is transferred to the district where related actions are pending." (internal quotation marks omitted)).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion to transfer venue.  A separate Order accompanies this Memorandum Opinion.

**SIGNED:**     **Emmet G. Sullivan**
            **United States District Court Judge**
            **May 7, 2010**